# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRIS DAVENPORT, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 05-054-E-LMB |
| ) | |
| v. ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| STATE OF IDAHO DEPARTMENT OF ) | |
| ENVIRONMENTAL QUALITY, ) | |
| ) | |
| Defendant. ) | |

Currently pending before the Court is Plaintiff's Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) (Docket No. 36). In the interest of avoiding delay, and because the Court conclusively finds that the decisional process on the pending motion would not be significantly aided by oral argument, the Court will address and resolve the motion without a hearing. Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Chris Davenport ("Plaintiff") has lived with insulin-dependent diabetes for over twenty years. *Davenport Affidavit*, ¶ 2 (Docket No. 19, Att. 3). Plaintiff worked for the State of Idaho

---

[1] For additional background, please refer to the Court's October 25, 2006, Memorandum Decision and Order (Docket No. 35).

MEMORANDUM DECISION & ORDER -1-

Department of Environmental Quality ("Defendant" or "DEQ") in Boise for six and one-half years as a Human Resources ("HR") Specialist and an Air Quality Analyst. *Id.* at ¶ 10.

In or around February 2003, Plaintiff applied for and was hired for an A-3 position as a Remediation Scientist in the Idaho Falls Office of DEQ. *Id.* at ¶¶ 12-14. Upon taking the A-3 position, Plaintiff was required to have a baseline physical. *Id.* at ¶ 16. During the physical, Plaintiff informed the physician that he had diabetes, and the physician recommended certain work restrictions. *Id.* at ¶ 17-18. DEQ adopted the restrictions for approximately 11 to 12 weeks. *Id.* at ¶ 19-22.

After the work restrictions had been lifted, Plaintiff was informed that he failed the probation period for the A-3 position. *Id.* at ¶¶ 30-31. Plaintiff then accepted an A-2 position as a Water Quality Analyst. *Id.* at ¶¶ 35-37. On or around October 9, 2003, Plaintiff received official notification that he had failed the A-2 position. *Id.* at ¶ 46. On October 24, 2003, Plaintiff was officially terminated from his employment at DEQ. *Id.* at 47.

On February 22, 2005, Plaintiff filed a Complaint and Demand for Jury Trial (Docket No. 1) against Defendant, bringing the following claims: violation of the Rehabilitation Act for disability discrimination (Count 1); violation of the Idaho Human Rights Act for disability discrimination (Count 2); violation of the Americans with Disabilities Act for disability discrimination (Count 3); violation of the Rehabilitation Act for failure to accommodate (Count 4); and violation of the Idaho Human Rights Act for failure to accommodate (Count 5).[2]

---

[2] Plaintiff amended his Complaint on March 8, 2005, but asserted the same claims against Defendant. *Amended Complaint & Demand for Jury Trial* (Docket No. 3).

**MEMORANDUM DECISION & ORDER -2-**

On June 13, 2006, Defendant filed its Motion for Summary Judgment, seeking judgment in its favor on all counts arguing that (1) Plaintiff's claims based on the Americans with Disabilities Act ("ADA") are barred by the Eleventh Amendment, (2) Plaintiff's claims of disability discrimination fail because Plaintiff does not have a qualified disability, and, even if Plaintiff had such a disability, Defendant had a legitimate, nondiscriminatory reason for the alleged adverse employment actions, which reason Plaintiff cannot show was a pretext for discrimination, and (3) the facts do not support a claim for failure to accommodate. *Defendant's Memorandum in Support of Motion for Summary Judgment* (Docket No. 13-1). Plaintiff opposed the motion arguing that DEQ imposed work restrictions, demoted Plaintiff from the A-2 position, and terminated Plaintiff's employment because of Plaintiff's disability. *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment*, pp. 10-12 (Docket No. 19).

Defendant's Motion for Summary Judgment was granted in part and denied in part. *See Memorandum Decision and Order*, p. 29 (Docket No. 35). The Motion for Summary Judgment was granted as to the following:

1. Counts One, Two, and Three (the disability discrimination claims), to the extent that the disability discrimination claims are based on Plaintiff's demotion from the A-3 to A-2 position or termination from the A-2 position.
2. Count Three (the ADA claim), to the further extent that it seeks recovery under Title II of the ADA or seeks recovery of money damages under Title I of the ADA.
3. Counts Four and Five (failure to accommodate claims).

*Id.*

Plaintiff seeks reconsideration of the Court's determination that he did not present sufficient evidence to give rise to an inference that either his demotion from the A-3 position or his termination from the A-2 position were because of his disability. *Memorandum in Support of*

MEMORANDUM DECISION & ORDER -3-

*Plaintiff's Motion for Reconsideration*, p. 2 (Docket No. 36, Att. 1). Plaintiff argues that an incorrect legal standard was applied in making this determination. *Id.* at 2-3.

## II.

## MOTION FOR RECONSIDERATION STANDARD

Reconsideration is appropriate if the court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.*

"[A] successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision. Second, a motion for reconsideration 'must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Save Our Bays and Beaches v. City and County of Honolulu*, 904 F.Supp. 1098, 1115 (D. Haw. 1994) (quoting *Painting Ind. of Hawaii v. U.S. Dept. of Air Force*, 756 F.Supp. 452 (D. Haw. 1990)).

As demonstrated further below, Plaintiff has met the reconsideration standard and successfully demonstrated that the original decision was in part erroneous.

## III.

## DISCUSSION

In Counts One, Two, and Three, Plaintiff asserts claims of disability discrimination in violation of the Rehabilitation Act, the Idaho Human Rights Act ("IHRA"), and the ADA, respectively. *Amended Complaint & Demand for Jury Trial*, pp. 9–11 (Docket No. 3). In determining whether Plaintiff falls within the provisions of the three acts, essentially the same

**MEMORANDUM DECISION & ORDER -4-**

legal standard and analysis applies to all three. *See* 29 U.S.C. § 791(g) (noting that the standard used to determine whether there has been a violation of this section are the standards applied under Title I of the ADA); Idaho Code § 67-5901(1) (noting that the purpose of the Idaho HRA is to provide for execution within the state of the policies embodied in Titles I and III of the ADA).[3]

In evaluating the disability discrimination claims, the Court must apply a burden-shifting standard. *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175–76 (9th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Accordingly, Plaintiff bears the initial burden of establishing the *prima facie* case of disability discrimination by presenting evidence that gives rise to an inference of unlawful disability discrimination. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). The establishment of the *prima facie* case effectively creates a presumption that the employer unlawfully discriminated against the employee and shifts the burden to Defendant to produce evidence that it had a legitimate, nondiscriminatory reason for the allegedly-wrongful employment decision. *Bradley*, 104 F.3d at 270; *Wallis*, 26 F.3d at 889. If Defendant meets its burden, the presumption of unlawful discrimination "simply drops out of the picture," *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993)), and Plaintiff bears the ultimate burden of persuading the Court that the stated reasons for the adverse employment actions were false and the true reason was disability discrimination, *Bradley*, 104 F.3d at 270.

---

[3] The Court agrees with Plaintiff and Defendant "that cases for disability discrimination under the Rehabilitation Act, the ADA, and the Idaho Human Rights Act are analyzed the same" and that, consequently, Plaintiff's "claims for disability discrimination under each statutory scheme can be addressed together." *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment*, p. 5 (Docket No. 19).

**MEMORANDUM DECISION & ORDER -5-**

Defendant moved for summary judgment on the basis that Plaintiff could not establish a *prima facie* case of disability discrimination, because Plaintiff does not have a qualified disability. *Memorandum in Support of Motion for Summary Judgment*, p. 2 (Docket No. 13, Att. 1). In addition, Defendant argued that "Plaintiff's temporary work restrictions did not preclude Plaintiff from performing his job" and "DEQ had legitimate, nondiscriminatory grounds and reasons for determining that Plaintiff failed at the A-3 and A-2 positions." *Id.* at p. 7.

### A. Plaintiff's *Prima Facie* Case

On summary judgment, it was determined that there were genuine issues of material fact precluding summary judgment on the first two elements of the *prima facie* case: whether Plaintiff is considered under a disability within the meaning of the ADA and whether Plaintiff was qualified, with or without reasonable accommodation, to perform the essential functions of the job. *Memorandum Decision and Order*, pp. 21-22 (Docket No. 35). With regard to the third element, it was found that "a rational trier of fact could reasonably conclude that the work restrictions limited Plaintiff's ability to perform the normal functions of the A-3 restrictions in such a way that adversely affected Plaintiff's opportunities in that position," *Id.* at 24; however, Plaintiff did not "present sufficient evidence to give rise to an inference that either his demotion from the A-3 position or his termination from the A-2 position were because of his diabetes," *Id.* at 26.

Plaintiff now argues that it is not clear from the Memorandum Decision and Order that the correct "motivating factor" standard was applied. *Memorandum in Support of Motion for Reconsideration*, p. 2 (Docket No. 36). In addition, Plaintiff asserts that sufficient weight was not given to the evidence relied upon by Plaintiff in support of establishing his *prima facie* case.

The Ninth Circuit Court of Appeals has made it clear that "the ADA outlaws adverse employment decisions motivated, *even in part*, by animus based on a plaintiff's disability or request for an accommodation - *a motivating factor standard.*" *Dark v. Curry County*, 451 F.3d 1078, 1085 (9th Cir. 2006) (quoting *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)). Thus, the ADA does not require that discrimination is the only motive for an adverse employment action; it simply must be a factor or rationale in the employer's decision. *Id.* Moreover, this causation analysis involves a factual inquiry. *Id.* Therefore, to survive summary judgment, the Plaintiff must demonstrate that there is evidence in the record sufficient for a jury to find that Davenport was terminated, at least in part, due to his disability.

In addition, when considering discrimination claims on summary judgment, it is important to note the evidentiary difficulties in proving such a claim.

> In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of witnesses.

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Thus, "direct evidence of discrimination is not required in mixed-motive [discrimination] cases." *Cromwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006)(quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003)).

Plaintiff is correct when he argues that the Memorandum Decision and Order does not state whether the motivational factor standard was applied. Instead, the Order focuses on the quality of the evidence Plaintiff relied on in support of his contention that he was demoted and ultimately discharged because of his disability. The Memorandum Decision and Order cites the following evidence in support of Plaintiff's case:

**MEMORANDUM DECISION & ORDER -7-**

> (1) Plaintiff's contention that his work was not criticized before the DEQ
> adopted the work restrictions; (2) Plaintiff's contention that "[o]nly after
> DEQ learned about Mr. Davenport's diabetes did his technical skill
> suddenly become a problem"; (3) Plaintiff's dispute of DEQ's criticisms
> of his work; (4) Plaintiff's denial that "he did not understand the content of
> typical reports, basic notations in laboratory data sheets, latitude and
> longitude, and/or compass bearings"; (5) the fact that Plaintiff was
> required to take and pass an exam, though no other A-2 in the State of
> Idaho had ever been required to pass such an exam; and (6) DEQ's failure
> to provide any narrative explanation for Plaintiff's failure of the
> probationary period, which, Plaintiff claims, "suggests another motive."
> *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment*,
> pp. 14–17 (Docket No. 19); *Johnston Deposition, Exhibit 3 to Casperson
> Affidavit*, p. 27 (Docket No. 19, Att. 2).

*Memorandum Decision and Order*, p. 15 (Docket No. 35).

Initially, these facts were considered and it was determined that they are "unsupported by evidence in the record or constitute mere speculation, allegation, the denial of the credibility of Defendant's evidence, or subjective personal judgments of Plaintiff's competence for the position." *Memorandum Decision and Order*, p. 26. The Order further provides that "[m]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Id.* (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996)).

Upon further reflection, and after carefully applying the liberal law applicable to summary judgment in these types of cases, this Court finds, and thus concludes, that decision was in error. A detailed review of the file establishes that there is sufficient evidence in the record for a reasonable juror to conclude that DEQ considered Plaintiff's diabetes a factor in its decisions to demote and ultimately terminate Plaintiff. Although this evidence may be circumstantial in nature, the Ninth Circuit Court of Appeals has made clear that such evidence is sufficient to allow Plaintiff to take his discrimination claims to a jury.

**MEMORANDUM DECISION & ORDER -8-**

The evidence in the record supporting Plaintiff's allegation that he was demoted and ultimately terminated, at least in part, because of his disability is as follows:

(1) DEQ never raised performance issues until after it discovered Plaintiff's disability. *Memorandum in Support of Plaintiff's Motion for Reconsideration*, p. 7 (Docket No. 36, Att.1).

(2) Plaintiff testified that when Plaintiff complained that DEQ's work restrictions were not necessary, Jim Johnston of DEQ told Plaintiff that he did not want to tell Plaintiff's wife that Plaintiff was dead because he had an accident as a result of his diabetes. *Davenport Aff.* at ¶ 20 (Docket No. 19, Att. 3).

(3) Plaintiff testified that when he was demoted from the A-3 position to the A-2 position, Mr. Johnston appeared reluctant and told Plaintiff he would not receive any help in learning his new position and would be "under a microscope." *Id.* at ¶ 35.

(4) Plaintiff testified that his supervisor as an A-2, William Teuscher, told him that someone at DEQ had a "hidden agenda" and did not want him there for some unknown reason. *Id.* at ¶¶ 38-39.

(5) Plaintiff was demoted and thereafter terminated from the A-3 and A-2 positions respectively before the applicable probationary period had concluded. *Id.* at ¶¶ 32, 45.

(6) DEQ did not provide a narrative explanation for its decisions that Plaintiff failed the A-3 and A-2 positions. *Id.* at ¶¶ 33, 46, Exs. F, I, and J.

(5) Plaintiff was required to take a test that no other A-2 employee in the State of Idaho has been required to take. Ex. 1 to *Affidavit of Deanne Casperson* (Deposition of Kathleen J. Osborn) (Docket No. 19, Att. 2).

The cumulative impact of these discrete facts is sufficient to create an inference that DEQ's motives were discriminatory.

**MEMORANDUM DECISION & ORDER -9-**

### B.     Burden Shifting

In its Motion for Summary Judgment, Defendant alternatively argues that "assuming Plaintiff had a qualified disability and had set out a prima facie case of discrimination, the burden shifting analysis ... is applicable to DEQ's motion for summary judgment." *Memorandum in Support of Motion for Summary Judgment*, p. 12 (Docket No. 13, Att. 1). In terms of setting forth a legitimate, nondiscriminatory motive, Defendant argues that "Plaintiff did not have the education, background, or skills to complete the A-3 position." *Id.* at 7. In addition, Defendant argues that Plaintiff did not learn or grasp the concepts necessary for him to work as an A-2. *Id.* at 11.

In the October 25, 2006 Memorandum Decision and Order it was determined that Defendant met its burden of production and "presented legitimate, non-discriminatory reasons for the demotion from the A-3 position and the termination from the A-2 position." *Memorandum Decision and Order*, p. 27 (Docket No. 35). The Order summarizes the evidence as follows:

> Specifically, Defendant contends that these adverse employment actions were because there were several problems with Plaintiff's work, including difficulty in understanding the content of typical reports, basic notations in laboratory data sheets, latitude and longitude readings, and compass bearings, placing a monitor well in the wrong location due to inability to recognize a clay layer or understand its significance, and failing to properly prepare ground water samples for analysis. *Heaton Deposition, Exhibit 2 to Tingey Affidavit*, pp. 4, 6–8, 11–12 (Docket No. 14, Att. 2); *June 20, 2003, Notes, Exhibit 28 to Heaton Deposition, Exhibit 6 to Tingey Affidavit*, p. 2 (Docket No. 14, Att. 6); *see also Johnston Deposition, Exhibit 3 to Tingey Affidavit*, pp. 2, 4 (Docket No. 14, Att. 3) (noting Heaton's reported concerns about Plaintiff's abilities to adequately perform the job); *Johnston Deposition, Exhibit 3 to Tingey Affidavit*, p. 5 (noting Johnston's disbelief that Plaintiff had the "basic technical abilities to do the basic requirements of the job") (Docket No. 14, Att. 3).

*Id.* at n.7.

Under the *McDonnell Douglas* burden-shifting framework, once the Defendant meets its burden and produces admissible evidence of its legitimate, nondiscriminatory reasons for the adverse employment action, then "the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Chuang v. Univ. Of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)). To defeat a motion for summary judgment, a plaintiff must show that a genuine issue of material fact regarding pretext has been presented for trial. *Wallis*, 26 F.3d at 889. "If a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate." *Id.*

"[I]n deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the *prima facie* case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons." *Id.* at 890. "[T]he plaintiff must produce 'specific, substantial evidence of pretext." *Id.* (quoting *Steckl v. Motorola*, 703 F.2d 393, 393 (9th Cir. 1983). "A plaintiff can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Evidence of pretext may include deviation from the employer's protocol or procedures. *Porter v. California Dept. of Corrections*, 419 F.3d 885, 896 (9th Cir. 2005).

**MEMORANDUM DECISION & ORDER -11-**

Plaintiff argues that all of the evidence in support of Plaintiff's *prima facie* case of discrimination undermines DEQ's stated nondiscriminatory and legitimate reasons for the adverse employment actions at issue. Davenport argues he has provided specific and substantial evidence, both direct and indirect, that DEQ's reason is not worthy of credence and that its actions evidence a discriminatory intent. *Memorandum in Support of Plaintiff's Motion for Reconsideration*, p. 13 (Docket No. 36, Att. 1). He also contends that "DEQ had well documented the problems with Plaintiff's work, which Plaintiff acknowledged, and there is no basis to assert that the legitimate reasons for the personnel action was a pretext." *Defendant's Memorandum in Opposition to Plaintiff's Motion for Reconsideration*, p. 7 (Docket No. 37).

Upon careful reconsideration, and in light of the summary judgment standard applicable to these types of cases, the Court finds, and thus concludes, that there is sufficient evidence of pretext to create a genuine issue of material fact. Plaintiff has identified evidence in the record that would rebut, or at least establish a genuine issue of fact, as to DEQ's asserted reasons for demoting and ultimately terminating Plaintiff from his employment with DEQ.

The most compelling evidence in the record to support Plaintiff's argument of pretext is that before he took the A-3 position, Plaintiff expressed concern that his technical skills were rusty, and was told that DEQ would teach him what he needed to know. *Davenport Aff.* at ¶ 13 (Docket No. 19, Att. 3). This testimony is supported by the testimony of DEQ's Human Resources Director, Kathleen Osborn, who also indicated that DEQ hired Plaintiff to fill the A-3 position despite his technical weakness. Ex. 1 to *Affidavit of Deanne Casperson* (Deposition of Kathleen J. Osborn, pp. 41-42) (Docket No. 19, Att. 2).

Moreover, the circumstantial evidence in the record shows that Plaintiff's technical skills did not become an issue until after DEQ discovered Plaintiff's disability. A possible, logical

**MEMORANDUM DECISION & ORDER -12-**

inference drawn from this evidence in Plaintiff's favor for the purposes of summary judgment is that Plaintiff's weak technical skills were not initially a concern and as such raise a factual question regarding pretext to a discriminatory motive.

In addition, Plaintiff has testified that after he failed the A-3 position, Mr. Johnston told him that he would not receive any help in learning the A-2 position. *Davenport Aff.* at ¶ 35. At the same time, Plaintiff testified that Mr. Teuscher told Plaintiff that Plaintiff could succeed at the A-2 position if he was provided some training. *Davenport Aff.* at ¶ 40. Drawing the logical inferences in Plaintiff's favor, as required by Rule 56 and applicable case law, this evidence suggests that, although Plaintiff had at least the skills to perform the A-2 position, he was not provided the training necessary to succeed.

Cumulatively, this evidence creates a genuine issue of material fact. A rational finder of fact could reasonably rely on such evidence and conclude that Plaintiff's technical skills were not the issue, but were a pretext as to DEQ's discriminatory intent. Therefore, while Defendant has succeeded in setting forth legitimate, nondiscriminatory reasons for the adverse employment actions, genuine issues of material fact remain that preclude summary judgment on Plaintiff's disability discrimination claims.

## IV.

## CONCLUSION

After thoughtfully reconsidering the evidence in the record, and in light of the applicable summary judgment standard in these types of cases, the October 25, 2006 Memorandum Decision and Order must be withdrawn to the extent that summary judgment was granted to Defendant on Counts One, Two, and Three (the disability discrimination claims) with regard to

Plaintiff's claims that he was demoted from the A-3 position and terminated from the A-2 position because of his disability.

V.

**ORDER**

In accordance with the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Reconsideration (Docket No. 36) is GRANTED.

2. The October 25, 2006 Memorandum Decision and Order (Docket No. 35) is withdrawn to the extent that Defendant's Motion for Summary Judgment (Docket No. 13) is DENIED with regard to Counts One, Two, and Three (the disability discrimination claims).

3. The October 25, 2006 Memorandum Decision and Order (Docket No. 35) remains otherwise unchanged with regard to granting Defendant's Motion for Summary Judgment (Docket No. 13) on: (a) Count Three (the ADA claim), to the extent Plaintiff seeks recovery under Title II of the ADA or seeks recovery of money damages under Title I of the ADA and (b) Counts Four and Five (failure to accommodate claims).

4. A telephone scheduling conference will be held on **April 10, 2007** at **10:45am** to schedule this matter for trial. Plaintiff shall initiate the conference call at (208) 334-1495.

DATED: **March 23, 2007**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION & ORDER -14-